# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

|   |   |   |
|---|---|---|
| **RUSSELL RAYMOND NICKEL** | ) | |
| Plaintiff, | ) | |
| v. | ) | Civil Action No. 11-0433 (ESH) |
| **KENNETH E. MELSON, *et al.*,** | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION

Plaintiff Russell Raymond Nickel challenges the denial of his Application for Restoration of Explosives Privileges by the Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF"). Because the Court concludes that the ATF's decision was not arbitrary or capricious, the government's Motion for Summary Judgment will be granted.

## STATUTORY AND REGULATORY BACKGROUND

Federal law provides that anyone convicted of "a crime punishable by imprisonment for a term exceeding one year" may not "receive or possess" explosives that have trafficked in interstate or foreign commerce. 18 U.S.C. § 842(i); *see id.* § 843(b)(1) (specifying that licenses to deal in explosive materials may not be granted to applicants described in § 842(i)). However, the law authorizes the Attorney General to grant an applicant relief from this prohibition

> if the Attorney General determines that the circumstances regarding the applicability of [§] 842(i), and the applicant's record and reputation, are such that the applicant will not be likely to act in a manner dangerous to public safety and that the granting of such relief is not contrary to the public interest.

*Id.* § 845(b)(2). Pursuant to the Attorney General's authority to promulgate rules and regulations "reasonably necessary to carry out" the federal explosives laws, *id.* § 847, the Attorney General

1

has delegated the authority to grant relief under § 845(b)(2) to the Director of the ATF. 27 C.F.R. § 555.142(b) ("application[s] for relief from disabilities must be filed with the Director"). The regulation describing and constraining the Director's authority to grant applications for relief from disabilities repeats the statutory standard and emphasizes the Director's discretion:

> The Director may grant relief to an applicant if it is established to the satisfaction of the Director that the circumstances regarding the disability and the applicant's record and reputation are such that the applicant will not be likely to act in a manner dangerous to public safety and that the granting of such relief is not contrary to the public interest.

*Id.* § 555.142(c)(1). The Director has delegated this authority to the Chief of the Arson and Explosives Program Division. (*See* Defs.' Mot. at 6 (citing ATF O 100.168).)

## FACTUAL BACKGROUND

On August 7, 2003, Nickel was indicted as a result of an ATF investigation of Next F/X, a pyrotechnics manufacturer. (*See* Defendants' Motion for Summary Judgment, Sept. 1, 2011 [Dkt. No. 10] ("Defs.' Mot."), Ex. B.) In 2001, Nickel had joined with Ron and Kim Walker to form Next F/X, which operated on the premises of the Walkers' other pyrotechnics business, Pyro Products, Inc., in Missouri. (Plaintiff's Papers in Opposition to Defs.' Mot. for Summary Judgment, Sept. 30, 2011 [Dkt. No. 11] ("Pl.'s Opp'n") at 1–2.) The government alleges that explosions at Pyro Products in 1999 and 2000 resulted in the deaths of two employees. (Defs.' Mot. at 2 n.1.) When a June 6, 2001 explosion on the premises shared with Next F/X injured three employees, the Occupational Safety and Health Administration ("OSHA") initiated an investigation. (*Id.* at 2; Pl.'s Opp'n at 1–2.) OSHA found that Nickel and the Walkers, on multiple occasions, had manufactured explosives for Next F/X without proper authorization; manufactured explosives for Next F/X that were different in composition than those authorized to be shipped by Pyro Products; mislabeled numbers for proper shipping of explosives; shipped explosives for Next F/X improperly using Pyro Products numbers; knowingly used Pyro

Product's product sheets for shipment of Next F/X explosives; and directed employees to mislabel Next F/X explosives. (Defs.' Mot., Ex. B at 15–18.) OSHA also found that after the June 2001 explosion but before calling for help, Nickel dismantled an unauthorized and unreported laboratory, removed the unauthorized lab contents, and concealed the contents in an unapproved storage container. (*Id.* at 18.) Nickel then directed employees to move explosives and equipment out of the Pyro Products facility, allegedly in an attempt to prevent inspectors from discovering regulatory violations. (*Id.* at 18–19.) OSHA concluded that Nickel and the Walkers continued to manufacture explosives for Next F/X, without authorization, after the explosion.

The parties differ somewhat as to Nickel's status at Next F/X at the time of the explosion and the OSHA investigation. Nickel maintains that he relinquished the titles of officer and director of Next F/X "shortly []after" June 2001. (Pl.'s Opp'n at 2.) Defendants maintain that Nickel remained in those roles, notwithstanding that he told the opposite to OSHA. (Defs.' Mot. at 2). The dispute is immaterial, however, because on May 17, 2004, Nickel pleaded guilty to making false statements to OSHA, a crime which is punishable by not more than five years' imprisonment under 18 U.S.C. § 1001(a). (Defs.' Mot., Ex. A; *see* Pl.'s Opp'n at 2 ("The precise nature of the allegation is that . . . Nickel denied being an officer or director of [Next F/X] when OSHA made inquiry of him, and he ultimately agreed to plea[d] guilty to only this charge.").) Nickel was sentenced on August 20, 2004. (Defs.' Mot., Ex. A.)

After he was indicted but prior to pleading guilty, Nickel submitted an Application for Restoration of Explosives Privileges to the ATF. (*See* Defs.' Mot., Ex. C.) On November 2, 2005, ATF Special Agent Joseph Cludy interviewed Nickel, who admitted that he was continuing to work as a pyrochemist with Stage F/X, a fireworks company owned by his father

and located in Columbus, Montana. (Defs.' Mot., Ex. D at 1.) In his report, Special Agent Cludy stated that, while Nickel's felony conviction would normally bar him from handling explosives, Nickel had received a "variance" because he had "file[d] . . . an application for restoration of explosives privileges." (*Id.*) Indeed, federal law provides that a licensee or permittee who files for relief within 30 days of indictment or conviction may continue operations while his application is pending. *See* 18 U.S.C. § 845(b)(3); 27 C.F.R. § 555.142(e)(1). Nickel's application was timely in this regard, as he filed it within 30 days of his felony conviction. However, the government initially alleged that Special Agent Cludy made a mistake, and that Nickel did not have a license or permit in his own name prior to his conviction. (*See* Defs.' Mot. at 3 n.2.) Nickel disputed this charge, and with citation to Special Agent Cludy's report, alleged that he "had valid and lawful privileges to possess explosives when he was interviewed . . . on November 2, 2005." (Pl.'s Opp'n at 3 (citing Defs.' Mot., Ex. D at 1).) The government now concedes that Nickel "did possess an explosives license in his name which expired December 1, 2005 and did have a license at the time he filed for relief from his disability on September 6, 2003." (Defs.' Reply in Support of Their Motion for Summary Judgment, Oct. 25, 2011 [Dkt. No. 16] ("Defs.' Reply") at 7.) Regardless, on the recommendation of ATF Special Agents and the Chief of the Arson and Explosives Program Division, Nickel's application was denied, and he was informed of the ATF's decision by letter dated August 4, 2006. (*See* Defs.' Mot., Ex. F.) Nickel petitioned for reconsideration (*see* Defs.' Mot., Ex. G), but the ATF affirmed its denial by letter dated April 23, 2007. (*See* Defs.' Mot., Ex. H.).

Nickel submitted a second application for relief from disabilities on February 4, 2010. (*See* Defs.' Mot., Ex. I.) Nickel listed his 2004 felony conviction on his application. (*Id.*) He also indicated that he had performed "research" for Next F/X from December 2001 until

4

February 15, 2010 (*id.*), but when interviewed by Special Agent Carl Anuszczyk, Nickel asserted, contrary to his prior interview with Special Agent Cludy, that he had not handled explosives since his conviction. (Defs.' Mot., Ex. J at 1.) Special Agent Anuszczyk interviewed the Assistant United States Attorney ("AUSA") who had handled the prosecution of Nickel and the Walkers, and when asked whether he would recommend restoring Nickel's explosives privileges, the AUSA indicated that there was nothing in Nickel's background to suggest that he would change his behavior. (*Id.* at 3.) Once again, ATF Special Agents and the Chief of the Arson and Explosives Program Division agreed that Nickel's application should be denied. (*See* Defs.' Mot., Ex. K.) ATF informed Nickel of its decision by letter dated September 28, 2010. (Defs.' Mot., Ex. L.) That letter, which is the subject of Nickel's APA challenge, informed him that his application for relief from disabilities was denied because "[i]t ha[d] been determined that granting relief would not be consistent with the public interest." (*Id.*) The letter listed two "of the more important factors that" the ATF considered—Nickel's "2004 conviction for making false statements in Federal District court," and his possession of "explosives while prohibited." (*Id.*)

Nickel sued, naming as defendants Kenneth E. Melson, in his official capacity as Deputy Director of the ATF; Joseph M. Riehl, in his official capacity as Chief of the ATF's Arson and Explosives Program Division; and the ATF itself. (Complaint, Feb. 24, 2011 [Dkt. No. 1] ("Compl.") at 1; *id.* ¶ 5.) Nickel alleges that the ATF's denial of his application was arbitrary and capricious, in part because the ATF did not "supply a copy of the administrative record" and failed "to provide any reasoning or explanation related to the denial." (*Id.* ¶ 11.)

Defendants have now moved for summary judgment.

5

**ANALYSIS**

The Administrative Procedure Act ("APA") "erects a 'presumption of judicial review' at the behest of those adversely affected by agency action, *Abbott Laboratories v. Gardner*, 387 U.S. 136, 140 (1967), except insofar as 'agency action is committed to agency discretion by law.' 5 U.S.C. § 701(a)(2)." *Kreis v. Sec'y of Air Force*, 866 F.2d 1508, 1513 (D.C. Cir. 1989) (citation format altered). Where a plaintiff challenges an agency action that is so committed, the plaintiff may properly invoke federal jurisdiction under the "'federal question' statute, 28 U.S.C. § 1331," but plaintiff nonetheless fails to "state a claim under the APA." *Oryszak v. Sullivan*, 576 F.3d 522, 525 (D.C. Cir. 2009). If, as the government argues here, 18 U.S.C. § 845(b)(2) commits the granting of relief from disabilities under the federal explosives laws to agency discretion, then Nickel's lawsuit is properly dismissed. *Cf. Cody v. Cox*, 509 F.3d 606, 610 (D.C. Cir. 2007) (placing the burden on the government to demonstrate that 5 U.S.C. § 701(a)(2) applies).

Nickel has failed to respond to the government's argument. (*See* Defs.' Mot. at 6–8; Defs.' Reply at 2.) The Court may treat Nickel's failure to respond as a concession, *see Three Lower Counties Community Health Services Inc. v. U.S. Department of Health and Human Services*, 517 F. Supp. 2d 431, 434 n.2 (D.D.C. 2007),[1] and therefore, the case may be dismissed on this basis. But even if the ATF's decision were reviewable under the APA, the Court would conclude that the agency's denial of Nickel's application for restoration of explosives privileges was not arbitrary and capricious, and therefore that it did not violate 5 U.S.C. § 706(2)(A). *See Am. Bioscience, Inc. v. Thompson*, 269 F.3d 1077, 1083 (D.C. Cir. 2001) ("when reviewing

---

[1] Nickel has also failed to respond to the government's convincing arguments for dismissal of his constitutional claims. (*See* Compl. ¶ 10; Defs.' Mot. at 11–14; Defs.' Reply at 9–11.) Nickel has therefore conceded these claims as well. *Three Lower Cntys. Cmty. Health Servs. Inc.*, 517 F. Supp. 2d at 434 n.2.

agency action the question of whether the agency acted in an arbitrary and capricious manner is a legal one which the district court can resolve on the agency record . . . in the context of a . . . motion for summary judgment" (citing *Univ. Med. Ctr. of S. Nevada v. Shalala*, 173 F.3d 438, 440 n.3 (D.C. Cir. 1999));[2] *James Madison Ltd. by Hecht v. Ludwig*, 82 F.3d 1085, 1096 (D.C. Cir. 1996); *San Luis Obispo Mothers for Peace v. U.S. Nuclear Regulatory Comm'n*, 789 F.2d 26, 37 (D.C. Cir. 1986) (en banc) ("[T]he party challenging an agency's action as arbitrary and capricious bears the burden of proof.").

Congress granted the Attorney General broad discretion in authorizing him or her to grant relief from disabilities under the federal explosives laws. After considering "the circumstances" under which the applicant's explosives privileges were withdrawn in the first place, the Attorney General is directed to take into account "the applicant's record and reputation" in deciding whether he is "likely to act in a manner dangerous to public safety." 18 U.S.C. § 845(b). The Attorney General is furthermore empowered to deny an application for relief from disabilities where granting it would be "contrary to the public interest." *Id.* The D.C. Circuit has "often held that the scope of judicial review of . . . a refusal to grant waivers or exceptions . . . is quite narrow." *Marshall Cnty. Health Care Auth. v. Shalala*, 988 F.2d 1221, 1225 (D.C. Cir. 1993) (citing *City of Angels Broadcasting, Inc. v. FCC*, 745 F.2d 656, 663 (D.C. Cir. 1984); *Thomas Radio Co. v. FCC*, 716 F.2d 921, 924 (D.C. Cir. 1983); *WAIT Radio v. FCC*, 459 F.2d 1203, 1207 (D.C. Cir. 1972)). True, "[e]xtremely narrow review is not . . . no review at all," *id.*, and

---

[2] When reviewing agency action, "the usual summary judgment standard does not apply." *UPMC Mercy v. Sebelius*, --- F.Supp.2d ----, 2011 WL 2517323, at *3 (D.D.C. June 10, 2011). Rather, "'the district judge sits as an appellate tribunal,'" *id.* (quoting *Am. Bioscience*, 269 F.3d at 1083), and the court's "function . . . is to determine whether or not as a matter of law the evidence in the administrative record permitted the agency to make the decision it did." *Id.* (internal quotation marks omitted); *see Occidental Eng'g Co. v. INS*, 753 F.2d 766, 769–70 (9th Cir. 1985).

yet, as in *Kreis*, "[w]hile the broad grant of discretion implicated here does not entirely foreclose review of the [agency's] action, the way in which the statute frames the issue for review does substantially restrict the authority of the reviewing court to upset the [agency's] determination." 866 F.2d at 1514. The agency "must give a reason that a court can measure, albeit with all due deference, against the 'arbitrary or capricious' standard of the APA." *Id.* at 1514–15.

Here, the ATF has offered two reasons that suffice under the APA. First, and most importantly, "the circumstance[]" under which Nickel's explosives privileges were revoked, 18 U.S.C. § 845(b)(2), was his felony conviction for making false statements to OSHA officials who were investigating improper handling of explosives after an explosion at Next F/X, where Nickel worked.[3] (*See* Defs.' Mot., Ex. A (2004 judgment); Defs.' Mot., Ex. L (Sept. 28, 2010 letter from the ATF informing Nickel that his application was denied and that one "of the more important factors" in the denial was his "2004 conviction for making false statements in Federal District court").) The fact that Nickel's felony conviction related to his handling of explosives is certainly relevant to the agency's determination of whether his privileges ought to be restored. That his conviction was for lying to investigators further counsels against granting his application for relief from disabilities.

Second, while not listed among the "most important" factors the agency said it considered when it communicated its decision to Nickel (*see* Defs.' Mot., Ex. L), the agency concluded—after a thorough review—that Nickel's "record and reputation," 18 U.S.C. §

---

[3] Nickel protests that he was not "convicted for 'making false statements in *a* Federal District court.'" (Pl.'s Opp'n at 6 (emphasis added).) First, Nickel misquotes the ATF's letter, which cited Nickel's "conviction for making false statements in Federal District court." (Defs.' Mot., Ex. L.) Second, Nickel misreads the agency's statement, which taken in context clearly referenced his conviction, *in* federal court, for making false statements to OSHA investigators. The ATF was not erroneously referring to a conviction for making false statements in a federal court proceeding.

845(b)(2), were such that his application ought to be denied. (*See* Defs.' Mot., Ex. J (ATF's Report of Investigation).) His record included his 2003 indictment for a number of crimes related to his employment in the pyrotechnics industry. (*See* Defs.' Mot., Ex. B at 16–19.) As for Nickel's reputation, the agency acknowledges that Nickel's personal references support the restoration of his explosives privileges. (*See* Defs.' Mot., Ex. J at 8.) The agency emphasizes, however, that the AUSA who worked on his criminal case believed that Nickel would not change his behavior (*see id*. at 3) and that the Special Agent charged with investigating his application concluded that he "is likely to act in a manner that is dangerous to public safety and / or the granting of him relief of disabilities is contrary to the public interest." (*Id.* at 8). The ATF was within its discretion to rely on these opinions of the AUSA and the Special Agent.

## CONCLUSION

The Court will grant defendants' Motion for Summary Judgment for two reasons. Nickel has conceded defendants' argument that the ATF's decision is not reviewable under the APA. In the alternative, even assuming that the ATF's decision is reviewable, the ATF did not act in an arbitrary or capricious manner in denying Nickel's application for relief from disabilities.[4] A separate Order accompanies this Memorandum Opinion.

/s/
ELLEN SEGAL HUVELLE
United States District Judge

Date: November 18, 2011

---

[4] The Court finds that Nickel's 2004 conviction and the agency's findings regarding his record and reputation are sufficient. Therefore, it need not address the agency's additional finding that Nickel handled explosives while he was prohibited from doing so.

9